Jasen, J.
The issue presented by these appeals is whether parents who have paid the tuition for the special education of their handicapped children are required to present their claim for reimbursement to the locality chargeable for these expenses within a specific period of time.
In Matter of L., the petitioner’s child suffers from severe emotional problems and from a speech defect. These conditions require. a form of specialized education. There are no facilities for this treatment in the public school system of New York City wherein the child resides. In order to obtain the necessary treatment, L., in 1971, was placed in a special, private school. The school charges an annual tuition of $5,200. *438 L.’s father paid $3,200 per year, with State assistance under section 4407 of the Education Law accounting for the $2,000 balance. In this proceeding, commenced in November, 1973, the father seeks to compel the City of New York to reimburse him for the tuition payments he made on behalf of his son for the 1971-1972, 1972-1973 and 1973-1974 school years, a total of $9,900. The Family Court, New York County, granted the request as to the 1973-1974 school year, but denied reimbursement for the two prior years on the ground that application had not been timely made. The Appellate Division, First Department, without opinion, unanimously affirmed the orders of the Family Court. Petitioner has taken a direct appeal to our court, asserting a constitutional deprivation. (CPLR 5601, subd [b].)
In Matter of K., the child suffers from a functional brain disorder as well as from a personality disorder. According to her doctor, the child needs a "highly individual approach to her education” and "an intensely therapeutic human milieu”. The facilities necessary for such treatment are also not available in the public school system of New York City, and, accordingly, the child was placed in the same private school attended by L. The father of the child, in June, 1974, commenced a proceeding to obtain reimbursement for the tuition payments he made on behalf of his child for the 1971-1972 and 1972-1973 school years. As in Matter of L., the annual payment by the parent was in the amount of $3,200, accumulating to a two-year total of $6,400. The Family Court, Kings County, granted the relief requested, holding that there was no requirement that relief be sought within a specified time period. The Appellate Division, Second Department, affirmed, without opinion. We granted the city leave to appeal.
The Constitution of our State guarantees to all children, handicapped or not, the right to a free education. (NY Const, art XI, § 1; Matter of Levy, 38 NY2d 653.) In the usual case, the State’s obligation is fulfilled where a child attends a public school maintained by the school district in which the child resides without payment of tuition. (Education Law, § 3202, subd 1.) A different situation obtains where the child suffers from a disabling condition and the local school system does not have the facilities necessary to meet the child’s specialized educational needs. This situation is addressed by section 232 of the Family Court Act which provides that the Family Court has jurisdiction over handicapped children. Where a child *439 within the court’s jurisdiction appears to be in need of special educational training, the court may make an order providing for the education of the child in a suitable private institution. The expenses incurred as a result of the private education, when approved by the court and duly audited, are a charge on the county in which the child is domiciled. In the counties contained within the City of New York, the costs are to be borne by the city. If the State Commissioner of Education approves the Family Court order, the State will reimburse the locality for one half of the expenses. (Education Law, § 4403.) The State Department of Education may also, if it finds that a handicapped child is not receiving instruction due to the lack of public facilities for instruction of children with unusual handicaps, contract with a private educational facility for the instruction of the child, provided that the department does not expend in excess of $2,000 per year for each pupil. (Education Law, § 4407.)
There is no doubt that the children involved in this case were entitled to a tuition-free education. There is also no dispute that these children are handicapped and that, at the time the children first entered the private school, the New York City school system did not have the special facilities required for their education. The sole issue is whether the parents of these children, having partially paid the school tuition, were required to make a prompt application for reimbursement. We conclude that the parents were obligated to seek reimbursement within the school year for which the tuition was paid.
Section 232 of the Family Court Act is designed to provide an orderly mechanism for meeting the immediate educational needs of handicapped children. Under the section, the court must continually review the condition of the children, as well as the state of available public facilities. It is obvious that the condition of a handicapped child may change substantially within the course of a single school year. After the commencement of his private instruction, the condition may improve to the point that the child is capable of attending public school, either in the regular course of instruction or as part of a special program. Alternatively, the changed condition might be more appropriately treated in a different private school, with a resulting change in the amount of tuition charged. It is equally possible that additional facilities may have been added to the public school system. The school district might find, for *440 example, that the number of children with a particular handicap has so increased that it is more economic to construct and maintain public facilities than it is to continue to pay tuition to a private school. The school district might also possess funds, not previously available, that can be applied to the cost of hiring teachers with specialized training and to the expense of obtaining additional equipment for use in a regular public school. In sum, the Family Court, in order to carry out its obligations under section 232, must review each case on an annual basis and determine whether its previous order should be amended or modified.
The proceeding for tuition reimbursement is the procedural vehicle which initiates the annual review. By not presenting claims for tuition reimbursement within the current school year, parents deprive the court of the opportunity to make the periodic review required by statute. To honor a late request is to reimburse parents for expenses that may not be properly chargeable to the locality. If new facilities had been added during the course of private instruction, the child, to obtain a free education, would have to transfer to the public school system. The parent who keeps his child in the private institution thereafter does so at his own expense. Similarly, if the child has developed so that use of public instructional facilities is now appropriate, the parent would have to bear the cost of continuing the child’s private course of instruction. These determinations must, by their nature, be made within the school year for which tuition is paid. Later consideration would preclude an opportunity to make necessary changes.
The dissenters in our court contend that, under this ratio- . nale, an application might be timely if made on the last day of the school year. (At p 442.) We do not agree. Although it is not our function to set an arbitrary deadline within which application must be made, and we decline to do so, we believe that the statute requires that a claim be filed promptly after payment of tuition while sufficient time remains in the school year for any changes in placement to be effectuated. Since the review is necessary to ensure that the child is appropriately receiving private instruction at public expense, the review proceeding initiated by the tuition claim must occur while there is time to prevent further unnecessary expenditure of public funds.
Even aside from the requirement of periodic review implicit in section 232, it is clear that the Legislature intended to *441 provide an orderly procedure for the apportionment and payment of tuition expenses. Without a limitation on the time to make application for tuition reimbursement, the local governments and school districts face budgetary chaos. If parents could cumulate claims dating back several years, the locality would not know when such claims would be presented, if ever, and would not be able to budget for them in an adequate manner.
A regulation promulgated by the State Department of Education, contrary to the implication of the dissent, supports our view that claims must be promptly made. As to students not previously receiving State assistance or who are not enrolled in approved institutions, the State will not approve for reimbursement to the locality any order for special educational services unless a recommendation for such services is received "on or before April 15 in the school year for which special educational services are sought.” (8 NYCRR 200.8 [b].) Moreover, in any case, the locality must submit its own claim for State contributions "not later than 12 months from the date on which a certificate of approval for State aid was issued, or 12 months from the last day of the school year within which special educational services were provided, whichever is later.” (8 NYCRR 200.8 [c].)* Since it is the claim of the parents for reimbursement that triggers the payment for which the locality, in turn, will be reimbursed by the State, the locality cannot receive its statutory reimbursement from the State unless the claim of the parents is promptly filed. The regulation does not, in any of its subdivisions, authorize, much less require, localities to pay claims arising from prior years.
We conclude that the claims of the parent of L. and the parent of K. for the school years 1971-1972 and 1972-1973 were properly denied since the claims were not timely presented for payment. Accordingly, in Matter of L., the order of the Appellate Division should be affirmed. In Matter of K., the order of the Appellate Division should be reversed.

 The State apparently views this regulation somewhat differently. However, the city, in its brief, disputes the State’s interpretation and questions the lawful authority of the State to require it to make retroactive payments. In our view, the regulation does not require the city to make these payments and since the State has not imposed such requirement, we express no opinion as to its authority to do so.